UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CHRISTINE M. FORSYTHE,        )
                             )
            Plaintiff        )
                             )
        v.                   )    Case No. 2:08 cv 337
                             )
TICOR TITLE INSURANCE COMPANY, )
                             )
            Defendant        )


OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 19] filed by the defendant, Ticor Title Insurance
Company, on November 30, 2009, and the Motion to Strike Plain-
tiff's Inadmissible Evidence Submitted in Opposition to Summary
Judgment [DE 24] filed by the defendant on January 29, 2010.  For
the following reasons, the Motion to Strike Inadmissible Evidence
[DE 24] is **GRANTED IN PART** and **DENIED IN PART,** and the Motion for
Summary Judgment [DE 19] is **GRANTED.**

Background

The plaintiff, Christine M. Forsythe, was employed by Ticor
Title, Inc., a corporation that provides title insurance and
escrow services to the residential and commercial real estate
industry.  Ticor operates several offices in the Northwest
Indiana area.  When Forsythe was hired in November 1986, she
worked under the title of Escrow Manager and managed three
employees in Ticor's Valparaiso, Indiana office and also func-
tioned as an Escrow Closer by scheduling, preparing for, and

conducting closings on real estate transactions. Ticor uses a computer system, the TEAM System, to accumulate closing data and to generate the closing statements which are presented to the parties for signing at the closings. During her employment, Bob Soohey acted as County Manager for Ticor, overseeing operations throughout Porter and LaPorte Counties, and he was Forsythe's superior within the corporation. Skip Hoener acted as Indiana State Manager Vice President of Ticor and also was Soohey's supervisor.

In January 2002, Forsythe was assigned to work out of the Century 21 Executive Group Real Estate office operated in Valparaiso by Larry Hitz. There, she acted as an on-site closer for Executive Group's clientele. She maintained her title as Escrow Manager while working out of the Executive Group office. At this time, Forsythe reported to Jackie Stuck, her supervisor in the Valparaiso office. During her time at the Executive Group, Forsythe would work late, long after the close of business and often past midnight. For whatever reason, Forsythe kept these unconventional work hours and does not deny the fact that it happened often, both during her time at Executive Group or thereafter.

During a September 2004 computer training meeting, Stuck allegedly made a statement referring to a younger co-worker of Forsythe's who "should think about this challenge and that she was the younger future employee" while Forsythe was "probably getting tired of doing this job and would be retiring." (Letter

from Forsythe to Hoener dated November 7, 2004, Tab A of Ticor's Appendix, DE 21-2, p. 28)  Stuck left Ticor's employ in 2005.

In February 2006, Hitz discontinued the in-house relationship with Ticor, and Soohey transferred Forsythe back into the Valparaiso office.  Although there is dispute and apparent confusion as to Forsythe's job title at this time, the undisputed facts reveal that she continued to act as an Escrow Closer and that her salary remained exactly the same.[1]  Upon returning to the Valparaiso office as her home base, Forsythe continued to work unorthodox hours.

From December 2006 through early March 2007, Forsythe took a medical leave of absence.  She was cleared to return to work on March 5, 2007, with no restrictions, except a recommendation that she limit her work to 40 hours per week.  In preparation for her return, Soohey and Forsythe discussed factors that would make for a successful work relationship, one of which was Forsythe's hope that she could limit her work week to 40 hours, a condition to which Soohey wrote in response that he "couldn't agree more." (Tab A of Ticor's Appendix, DE 21-2, pp. 22-25)  Soohey felt that the late night hours impacted work product quality, workplace

---

[1]The briefing in this matter includes a dispute over what Forsythe's title was at different points in her employment with Ticor.  Forsythe asserts that she was reclassified as a Closer in June 2001, then had her title changed to Escrow Service Manager in January 2002, apparently in conjunction with her move to the in-house position at Executive Group, and that Soohey referred to her as a Closer upon her return to the Valparaiso office following the end of the in-house relationship with Executive Group.  However, unless noted otherwise, her basic job duties and pay remained the same.  The dispute over job title does not seem to affect the legal analysis of the summary judgment issues.

safety, and could be detrimental to Forsythe's well-being.

Similarly, Forsythe seemed concerned that the problems necessi-

tating her medical leave could return if she resumed her irregu-

lar work hours.

Another topic discussed was Forsythe's request to come in

late on mornings after she had worked late night before, a

request which Soohey denied, responding:

> It appears . . . you are asking permission to
> come in late the morning after staying in the
> office late the previous night.  I don't see
> how this varies from how you used to operate.
> My response [to this request] is as follows:
> Office hours are from 8:30 a.m. – 5:00 p.m.
> We both agree a 40 hour work week is in your
> best interest.

(Tab A of Ticor's Appendix, DE 21-2, p. 24)

Forsythe's requests conflicted with each other, but Ticor's

acquiescence to the 40 hour work week negated the need for the

delayed start on some mornings.  However, Forsythe returned to

her late night habits, and Ticor discovered that she was sending

work emails between the hours of midnight and 5:30 A.M.

For reasons unknown, Forsythe revealed her late night work

habits to customers at the closings.  Whether it was complaining

or bragging, and whether it was reported by few or multiple

customers, is irrelevant:  after Forsythe returned to work from

her leave, Ticor received at least one complaint from a customer

about her assertion during a closing that she worked long after midnight on the closing documents.[2]

After discovering that Forsythe had worked until 5:30 a.m., Soohey and Debi Driver, the Human Resources administrator in Porter County, had a meeting with her on June 1, 2007.  The meeting's discussion was memorialized and signed by Forsythe, Soohey, and Driver.  They discussed the reasons for the odd work hours despite the agreement to work conventional hours.  They also discussed Forsythe's work habits at those hours, especially in light of the fact that the computer programming used to compile closing data and documents, the TEAM System, shut down each day at 10:00 p.m. and was unavailable to Forsythe during these nighttime hours.  Forsythe explained her difficulty accomplishing the necessary tasks during normal business hours without having the receptionist hold her calls and because of interruptions throughout the normal working day.  Soohey asked if she needed more help and expressed a lack of understanding of why she cannot "get things done like everyone else."  (Tab A of Ticor's Appendix, DE 21-2, p. 26)  When Forsythe blamed late-day closings on a builder's preference, Soohey pointed out that when she was gone

---

[2]Again, Forsythe argues about the identity and number of complaints received about her behavior and denies that Hitz ever complained about her late night hours while she was at the Executive Group, but she concedes that there was at least one complaint after she returned to Ticor's Valparaiso office.  For summary judgment consideration, conceding the one incident is sufficient and relying solely on the one report keeps the facts here in a light most favorable to Forsythe.  Similarly, Forsythe denies that Soohey had spoken to her about her unorthodox working hours on numerous occasions, but she concedes that before the June 1, 2007 meeting, he had discussed the issue with her "once or twice."  (Dep. of Christine Forsythe, pp. 137-38)

on leave, that builder's closing was conducted during regular business hours without issue. Forsythe confirmed that during the late night hours, she "got quite a few calls from her family" and would "sleep at her desk" when working late. (DE 21-2, p. 27) Soohey repeated his earlier instruction for Forsythe to cease working beyond normal business hours.

Forsythe has named two other Ticor employees that she alleges also worked after midnight at some time during her employment. One of those employees, Loran Rosenow, was verbally reprimanded for working the late hours, but Rosenow was unaware of any complaints from anyone else about his late night work. She and Rosenow contend Ticor piled on large amounts of work, expecting it to be timely while turning a blind eye to the late nights necessary to complete the workload. The other woman Forsythe named, another Closer, discontinued the practice at her husband's request and never was reprimanded or received any customer complaint for the odd hours. Ticor acknowledges that at the end of the month when an increased number of closings were scheduled, it was not uncommon for Closers to work after hours. However, Ticor maintains that there was no purpose to working after the TEAM System became inaccessible and no reason for working after midnight.

Within two weeks of the June 1 meeting, Ticor became aware that Forsythe had worked on a closing until approximately 3:00 a.m. Soohey discussed the matter with Hoener and subsequently terminated Forsythe for willful insubordination for refusing to

follow his direct order to stop working throughout the night. Forsythe's employment ended on July 25, 2007.

Ticor's Valparaiso office employed other escrow closers - Peggy Lawhead and Penny Bruno. Lawhead is older than Forsythe, but Bruno was under the age of 40. When Forsythe was out on medical leave, Bruno, who had been working part-time, used Forsythe's office space and helped cover for Forsythe's absence.[3] Upon Forsythe's discharge, Bruno was made a full time Escrow Closer and was paid the same salary that Forsythe had received. In the Spring of 2008, Hoener's retirement created a shuffling of duties and job assignments within the Indiana divisions of Ticor, and both Lawhead and Bruno were offered the position of Escrow Manager of the Valparaiso office. Although neither woman actively pursued the position - in fact, by all accounts neither woman wanted more responsibilities - Bruno accepted the position and title on June 1, 2008.

On August 2, 2007, Hoener wrote a handwritten note to and a typed letter of recommendation regarding Forsythe. The note said:

> Hi Chris. Here is my person [sic] letter.
> Let me know if it is ok or you need more.
> Wish you the best. I am very sorry, Chris.
> You are always welcome! You take good care
> of yourself. Thanks for all you have done

---

[3] Forsythe proffers numerous unsubstantiated accusations concerning Bruno's work ethic and ambition. She claims that Bruno's aspiration to retain full time employment after Forsythe's return from medical leave is evidence of age discrimination. Forsythe also claims that closed-door meetings that Bruno had in Soohey's office, often "without files", constitute evidence of age discrimination claims. *See* Forsythe Dep. p. 130.

over the many years.  Try and enjoy your new direction this change has caused you.  Remember the Book "Who Moved the Cheese."  Thanks Skip.

(Resp. in Opp. to Sum. J., Ex. 15, DE 23-19, p. 4)

The letter of recommendation read:

To Whom It May Concern:

My name is Skip Hoener.  I hold the position of Indiana State Manager Vice President of Ticor Title Insurance Company in Indiana, but I am not writing this letter from that position, but only as my personal reference.

I have personally known Chris for over 21 years and during that time I have seen Chris do whatever it takes to provide exceptional service to customers.  She is a quality professional business woman.

She is a very hard worker and dedicated to her work.  She has no reservation in putting in many hours to complete every job in a dependable and reliable way.  She is a person that can always be counted on to be on time and there every day.  Chris is a quality person, that can be counted on to do things right the first [sic].

Chris is a caring person for all the people around her.  I consider Chris one of the nicest people I know and am proud to call her my friend.  She is truly one of the Good People in this World.

I would highly recommend Chris to a company that is looking for a professional employee who will take on tasks and not have to be continually supervised.

Very truly yours,
[signature]
H. "Skip" Hoener

(Resp. in Opp. to Sum. J., Ex. 15, DE 23-19, p. 3)

On November 21, 2008, Forsythe filed her Complaint with this court alleging that her discharge was motivated by her age in violation of the Age Discrimination in Employment Act. Her date of birth is September 9, 1954, making her fifty-three (53) years old at the time she was fired. Forsythe relies on her replacement as Escrow Manager by Bruno, stating that "the proof is that she is younger." (Forsythe Dep. p, 159)

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); *Celotex Corp*., 477 U.S. at 322-23, 106 S.Ct. at 2553; *Stephens,* 569 F.3d at 786;

*Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); *Springer v. Durflinger,* 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Before addressing the motion for summary judgment, Ticor's Motion to Strike must be considered. To support a claim that has been challenged on summary judgment, an affidavit may not be based upon "self-serving statements . . . without factual support in the record." *Thanongsinh v. Board of Education*, 462 F.3d 762, 781 (7th Cir. 2006)(*quoting Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004)). Rather, Rule 56(e) requires that an affidavit must be "made on personal knowledge [and] set forth facts as would be admissible in evidence." This rule further provides that an affidavit offered in opposition to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). *See also Drake v. Minnesota Mining and Manufacturing Company*, 134 F.3d 878, 886 (7th Cir. 1998)(*quoting Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983)("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

In addition, a party resisting summary judgment may not "patch-up potentially damaging deposition testimony with a contradictory affidavit." ***Commercial Underwriters Insurance Company v. Aires Environmental Services, Ltd.***, 259 F.3d 792, 799 (7th Cir. 2001). *See also* ***Buckner v. Sam's Club, Inc.***, 75 F.3d 290, 292 (7th Cir. 1996)("[T]he law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict deposition or sworn testimony.").

The biggest problem with Forsythe's supporting evidence is the profusion of hearsay testimony and lack of personal knowledge. Rule 56(e) requires that any evidence which is considered in deciding a summary judgment motion, including affidavits, must be admissible evidence. The rule is not as Forsythe claims – that although it currently is hearsay as presented in response to the summary judgment, if the plaintiff "could" remedy the deficiency at trial, then the court should considered it now.[4] To support this theory, Forsythe offers ***Hardrick v. City of Bolingbrook***, 522 F.3d 758 (7th Cir. 2008). ***Hardrick*** discusses whether

---

[4]Forsythe's Brief in Opposition to the motion to strike is replete with assertions that inadmissible evidence submitted in opposition to summary judgment "could" be made admissible at trial. Examples include: hearsay statements of Hitz included in Forsythe's October 5, 2009 Affidavit which "could" be cured by Hitz at trial and thus presented in a form admissible at that time (p. 4); Forsythe's assertion that "thanks to my extreme dedication Ticor Title became very profitable", to which she "could testify at trial with profit sheets in front of her" (p. 6); Forsythe's variety of assertions that Soohey made statements inconsistent with those Ticor has put forth in defense which "could be remedied by putting Soohey on the stand" (pp. 7-9, 15); and Forsythe's assertion for the true reason that Hitz ended the in-house partnership with Ticor was based on his dislike for Soohey, which "could be solved at trial" by having Hitz testify (p. 14).

12

the plaintiff may offer his sworn answers to interrogatories to counter assertions made in support of summary judgment, and the court held that this form of evidence, an interrogatory answer as opposed to an affidavit or a deposition, was an allowable form of evidence to be offered.  "Evidence submitted on summary judgment 'need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.'"  522 F.3d at 761 (*quoting* and *citing* **Stinnett v. Iron Works Gym/Executive Health Spa, Inc.**, 301 F.3d 610, 613 (7th Cir. 2002)).

Contrary to Forsythe's argument, this holding does not negate the plethora of cases which prohibit hearsay in considering a motion for summary judgment.  *See* **Compania Adminis- tradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan International, Inc.**, 533 F.3d 555, 562 (7th Cir. 2008)(disregarding affidavits opposing summary judgment that lacked personal knowledge and were based on speculation and hearsay); **Keri v. Board of Trustees of Purdue University**, 458 F.3d 620, 631-32 (7th Cir. 2006)(striking hearsay  statements before ruling on motion for summary judgment); **Johnson v. Nord- strom, Inc.**, 260 F.3d 727, 735-36 (7th Cir. 2001) (affirming trial court's striking of inadmissible hearsay from summary judgment consideration); **American Automotive Accessories, Inc. v. Fishman**, 175 F.3d 534, 539 (7th Cir. 1999)(discussing inadmissi- bility of hearsay statements in consideration of summary judgment and the burden of proving exceptions); **Bradley v. Work**, 154 F.3d

704, 707 (7th Cir. 1998)("[T]o the extent that the proffered evidentiary materials contain inadmissible hearsay, lay opinions, speculations, or conclusions, they are stricken."); *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1150-52 (7th Cir. 1989) (discussing evidence offered and stricken in summary judgment consideration); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985)("In the form in which [plaintiff's evidence] was presented, it constituted inadmissible hearsay. The district court could not properly have relied upon the exhibits as submitted and neither may we."). The fact that Forsythe could call a witness to trial and ask him to testify at that time - a different *form* of evidence - does not cure the hearsay *content* of the evidence she now offers.

The Seventh Circuit often has referred to the requirement of the responding party to a motion for summary judgment to come forward with the evidence that she has as "the put up or shut up moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009); *AA Sales & Associates, Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008); *Argyropoulos*, 539 F.3d at 737; *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008); *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir. 2008); *Springer*, 518 F.3d at 484; *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005); *Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004); *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892 (7th Cir. 2003); *Albiero v. City of Kankakee*, 246 F.3d 927, 933

(7th Cir. 2001); ***Shank v. William R. Hague, Inc.***, 192 F.3d 675, 683 (7th Cir. 1999); ***Schacht v. Wisconsin Dept. of Corrections***, 175 F.3d 497, 504 (7th Cir. 1999) *rev'd on other grounds, **Higgins v. Mississippi***, 217 F.3d 951 (7th Cir. 2000).  Focusing on the precise argument of Forsythe, in ***Steen v. Myers***, 486 F.3d 1017, 1022 (7th Cir. 2007), the plaintiffs argued that if they "can establish at trial" the facts they asserted in their response to summary judgment, then their claim should survive.  Sticking with the theme, the Seventh Circuit noted that it "ha[s] consistently held that summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  ***Steen***, 486 F.3d at 1022 (internal quotation omitted).  The court affirmed the grant of summary judgment, which disregarded the speculative evidence offered by plaintiffs.

Likewise, Forsythe's hearsay evidence is prohibited.  This was her "put up or shut up" moment, and depositions or affidavits from the critical witnesses should have been offered now rather than relied on for trial.  All content of Forsythe's affidavits and allegations in her Genuine Issues of Material Facts and Additional Statements of Material Facts which are hearsay are stricken.

Ticor also argues that Exhibits 7 and 15 are unauthenticated documents, but it appears to withdraw any objection to Exhibit 15 because Ticor produced those letters during discovery.  Exhibit 7

is a printout of the website of Century 21 Executive Group displaying photographs of its agents. Not only is this document unauthenticated, but it is irrelevant. Photographs of the individuals involved in this lawsuit are not useful in any way. Exhibit 7 is STRICKEN.

In addition, Ticor argues that certain statements offered by Forsythe in her affidavit conflict with her deposition and should also be stricken. However, the court sees these inconsistencies concerning Forsythe's title to be inconsequential and immaterial in the final analysis of her ADEA claim. For this reason, the motion to strike is DENIED as to these inconsistencies.

Based on inadmissibility and lack of personal knowledge, the statements and evidence discussed *supra* regarding the motion to strike were not included in the factual background and were not considered by the court. Rather, the facts for this order include only admissible evidence construed in a light most favorable to Forsythe. The Motion to Strike Plaintiff's Inadmissible Evidence Submitted in Opposition to Summary Judgment is GRANTED IN PART and DENIED IN PART.

The ADEA states that:

> It shall be unlawful for an employer to fail
> or refuse to hire or to discharge any indi-
> vidual or otherwise discriminate against any
> individual with respect to his compensation,
> terms, conditions, or privileges of employ-
> ment, because of such individual's age.

> 29 U.S.C. §623(a)(1)

Under the ADEA, the plaintiff must show that his "termination or other adverse employment action would not have occurred 'but for' [his] employer's motive to discriminate on the basis of [his] age." *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1402 (7th Cir. 1996); *Horwitz v. Board of Education of Avoca School District No. 37*, 260 F.3d 602, 610 (7th Cir. 2001); *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). A plaintiff may prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See Reeves*, 530 U.S. at 142, 120 S.Ct. at 2105; *Cerutti v. BASF Corporation*, 349 F.3d 1055, 1060-61 (7th Cir. 2003); *Franzoni v. Hartmarx Corporation*, 300 F.3d 767, 771 (7th Cir. 2002); *Horwitz*, 260 F.3d at 610.

Under the direct method, the plaintiff must state facts in the form of direct or circumstantial evidence that show the employer's decision was motivated by an impermissible factor such as age. *Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir. 2004); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004); *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). Direct evidence is evidence that "can be interpreted as an acknowledgment

of the defendant's discriminatory intent." ***Ezell v. Potter***, 400
F.3d 1041, 1051 (7th Cir. 2005); ***Rogers v. City of Chicago***, 320
F.3d 748, 753 (7th Cir. 2003); ***Plair v. E.J. Brach & Sons, Inc.***,
105 F.3d 343, 347 (7th Cir. 1997). Circumstantial evidence, by
contrast, must create a "convincing mosaic" that "allows the jury
to infer intentional discrimination by the decision maker" and
points directly to a discriminatory reason for the employment
decision. ***Rhodes***, 359 F.3d at 504 (*quoting* ***Troupe v. May Depart-
ment Stores Company***, 20 F.3d 734, 737 (7th Cir. 1994)); ***Rogers***,
320 F.3d at 753; ***Adams***, 324 F.3d at 939.

Under the ***McDonnell Douglas*** burden shifting method, the
plaintiff first must establish a prima facie case by showing
that: (1) she is over 40 years of age; (2) she performed her job
satisfactorily and in accordance with the defendant's legitimate
expectations; (3) she suffered an adverse employment action; and
(4) a younger employee, who is similarly situated, was treated
more favorably. ***Olson v. Northern FS, Inc.***, 387 F.3d 632, 635
(7th Cir. 2004); ***Gusewelle***, 374 F.3d at 574; ***Franzoni***, 300 F.3d
at 771-72; ***Gordon v. United Airlines, Inc.***, 246 F.3d 878, 885-86
(7th Cir. 2001).

Once the plaintiff has established a prima facie case, a
presumption of discrimination is created and the burden shifts to
the defendant to articulate a legitimate, non-discriminatory
reason for its employment actions. ***Gusewelle***, 374 F.3d at 574;
***Zaccagnini v. Charles Levy Circulating Company***, 338 F.3d 672, 675
(7th Cir. 2003); ***Grayson v. City of Chicago***, 317 F.3d 745, 748

(7th Cir. 2003). The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessments." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993); *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106.

The burden then shifts back to the plaintiff who must show by a preponderance of the evidence that the defendant's stated reasons are merely a pretext for discrimination. *Steinhauer v. Degolier*, 359 F.3d 481, 484 (7th Cir. 2004); *Volvosek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 692 (7th Cir. 2003). The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." *Crim v. Board of Education of Cairo School District No. 1*, 147 F.3d 535, 541 (7th Cir. 1998). *See also Rummery v. Illinois Bell Telephone Company*, 250 F.3d 553, 557 (7th Cir. 2001). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. *Lesch v. Crown Cork & Seal Company*, 282 F.3d 467, 473 (7th Cir. 2002). *See also Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 574-576 (7th Cir. 2003). The trier of fact still may consider the evidence establishing a plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether a defendant's explanation is pretextual. *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106.

Despite these shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff.

*St. Mary's Honor Center*, 509 U.S. at 507, 113 S.Ct. at 2747;

*Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Butts*, 387 F.3d at

924.  A plaintiff alleging discrimination, however, has a lesser

burden when proceeding on a summary judgment motion.  In *Anderson*

*v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994), the

Seventh Circuit stated:

> Both *McDonnell Douglas* and [*St. Mary's Honor*
> *Center v. Hicks*, 509 U.S. at 507, 113 S.Ct.
> at 2747] speak to the burden the plaintiff
> bears at trial.  However, for summary judg-
> ment purposes, the nonmoving party, in this
> case the plaintiff, has a lesser burden.  He
> must only "produce evidence from which a
> rational fact-finder could infer that the
> company lied" about its proffered reasons for
> dismissal.
>
> 13 F.3d at 1124 (*quoting* *Shager v. Upjohn*,
> 913 F.2d 398, 401 (7th Cir. 1994))

*See also  Zaccagnini,* 338 F.3d at 676 (The plaintiff may avoid

summary judgment by showing specific facts that place the

employer's explanation in doubt); *O'Neal v. City of New Albany*,

293 F.3d 998, 1005 (7th Cir. 2002); *Alexander v. Wisconsin De-*

*partment of Health and Family Services*, 263 F.3d 673, 683 (7th

Cir. 2001).  If the plaintiff is unable to meet her burden, her

claims must fail.

Arguing that her claim can be proven under the direct

method, Forsythe asserts that the circumstantial evidence pre-

sented creates a "convincing mosaic" which a jury could find

intentional discrimination.  *See Troupe*, 20 F.3d at 737.  Her

alleged mosaic includes the random comment about retirement made

by Stuck and Bruno's eventual selection as her replacement.

In *Adams*, 324 F.3d at 935, the Seventh Circuit discussed the discriminatory bias of the decision-maker responsible for terminating the plaintiff. The evidence supported many actions by the decision-maker that revealed a clear racially-motivated animus. However, the plaintiff had no evidence of a link between the animus and the termination. "Bigotry, *per se*, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action." *Id.* at 939 (*quoting* and *citing* **Gorence v. Eagle Food Ctrs., Inc.**, 242 F.3d 759, 762 (7th Cir. 2001)). The direct evidence of discriminatory intent failed.

Forsythe offers as direct evidence a random comment by Stuck made almost three years before Forsythe was terminated. Although Stuck was in a supervisory position over Forsythe at the time of the impending retirement comment, she no longer was employed with Ticor after 2005 and was not the decisionmaker who terminated Forsythe in 2007. *See* **Martino v. MCI Communications Services, Inc.**, 574 F.3d 447, 452-53 (7th Cir. 2009)("[E]ven if [the supervisor that made a discriminatory comment] was biased and attempted to get [the plaintiff] terminated for this reason, the decisionmaker did an independent analysis and came to his own conclusion."); **Olson**, 387 F.3d at 635 ("We have found a statement to be direct evidence of discriminatory intent where the statement was made around the time of and in reference to the adverse employment action."); **Cerutti**, 349 F.3d at 1062 ("The plaintiffs' reliance on the 'out with the old, in with the new' statement

allegedly made by [the head of the plaintiffs' unit or the director of human resources for the unit] is also misplaced. [N]either [possible speaker] was involved in the decisionmaking process that resulted in the plaintiffs' terminations[.]"). The comment by Stuck cannot create a link between ageism and Forsythe's termination.

Forsythe's contention that her eventual replacement as Escrow Manager of the Valparaiso office by Bruno, a younger employee, also is insufficient to sustain a triable question based on direct evidence. The plaintiff's age along with being replaced by a younger person is not evidence of age discrimination. *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 658-59 (7th Cir. 1991)(en banc). Further distancing the younger Bruno's replacement of Forsythe from any discriminatory motive is the undisputed fact that Bruno was not offered and did not accept the position of Escrow Manager until nine months after Forsythe's termination. Simply put, the lag of nine months does not show any relationship between Forsythe's termination and Bruno's promotion into her position. The two pieces of evidence together fail to point to a discriminatory motive for terminating Forsythe's employment. Without a more substantial collection of circumstantial evidence, Forsythe cannot succeed via the direct method of proof.

Turning to the indirect method, the parties agree that Forsythe can establish that she is a member of the protected class because she is over 40 years of age and that she suffered

an adverse employment action when she was terminated.  The
parties disagree for the other two prongs of the analysis.  For-
sythe argues that the evidence shows that she was meeting her
employer's legitimate job expectations and that similarly situ-
ated younger employees were treated more favorably.  Ticor
contends that Forsythe was not meeting the company's legitimate
expectations because she was insubordinate.  Ticor also contends
that Forsythe has failed to identify any younger employees who
were similarly situated because no one else had engaged in
insubordination.  These two prongs will be addressed in reverse
order.

In her response brief, Forsythe argues that Bruno was a
similarly situated employee under the age of 40 who was treated
more favorably.  However, finding a comparable employee to
satisfy the fourth prong of the analysis requires a closer
similarity.  *See Antonetti v. Abbott Laboratories*, 563 F.3d 587,
592 (7th Cir. 2009)("The similar conduct to be examined must be
material to the cause of the discipline."); *Faas v. Sears,
Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008)("[The plain-
tiff]'s disparate treatment argument is untenable because she has
not come forward with evidence that the [comparable employees]
who escaped reprimand share a 'comparable set of failings' with
her.")(*citing* and *quoting Burks v. Wis. Dep't of Transp.*, 464
F.3d 744, 751 (7th Cir. 2006)).  In *Antonetti*, the plaintiffs
were fired for time card fraud - for failing to clock a break
then lying about eating offsite when confronted.  The person

offered as similarly situated by the plaintiffs had been honest when questioned about the incident. Because the plaintiffs in *Antonetti* could not name another co-worker who engaged in the same insubordinate conduct yet escaped reprimand, the plaintiffs failed to establish the fourth prong of their prima facie case for race discrimination. 563 F.3d at 592.

Here, Forsythe has named Bruno as a similarly situated employee under the age of 40 who was treated more favorably, but she has failed to describe any similar insubordinate behavior - violating a direct order from Soohey - by Bruno. Forsythe has discussed the late-night work habits of Lawhead and Rosenow, but both of these employees are older than Forsythe. Also, neither appears to have been the cause of customer complaints, and neither is alleged to have violated a direct, specific order from Soohey. *See, e.g., Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 478 (7th Cir. 2010)("Everroad is similarly situated only to other insubordinate employees."). Therefore, Forsythe has failed to satisfy the fourth prong of the analysis. Although failing to establish a similarly situated employee outside the protected class who was treated more favorably forecloses Forsythe's claim, the court continues the analysis in an effort to be thorough.

Normally, the court first determines whether a plaintiff has established a *prima facie* case before putting the employer to the burden of demonstrating a non-discriminatory reason for a termination and engaging in the pretext analysis. *Haque v. Thompson*

*Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006). However, some cases have a substantial overlap between the issue of satisfactory performance and the question of pretext. *Everroad*, 604 F.3d at 477. "When the employer asserts as the nondiscriminatory reason for termination that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the second element of the plaintiff's *prima facie* case and the pretext analysis." *Id.* (*citing Haque*, 436 F.3d at 823). *See also Bodenstab v. County of Cook*, 659 F.3d 651, 657 (7th Cir. 2009) (skipping over the initial burden-shifting of the indirect method and focusing on the question of pretext when the question of pretext arisies only after the plaintiff has established a *prima facie* case of discrimination and the employer has countered with a legitimate nondiscriminatory reason for the adverse action); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007)("[W]e may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision."). More on point, an employee "was not meeting her employer's legitimate expectations if she was insubordinate; insubordination is a non-discriminatory reason for termination[.]" *Everroad*, 604 F.3d at 478.

To demonstrate pretext, Forsythe must show that her employer did not honestly believe in the reasons it gave for terminating her. *Drchnavy v. Liimagrain Genetics Corp.*, 294 F.3d 871, 876

(7th Cir. 2002). "Pretext means a dishonest explanation, a lie rather than an oddity or an error." **Bodenstab**, 569 F.3d at 657. *See also* **Filar v. Board of Educ. of Chicago**, 526 F.3d 1054, 1063 (7th Cir. 2008)(explaining that to show pretext requires proof that the defendant's explanation is unworthy of credence). When a plaintiff claims to have been disciplined more harshly than other employees, the plaintiff must demonstrate that the other employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." **Antonetti**, 563 F.3d at 592. The similar conduct to be examined must be material to the cause of the discipline in order to be relevant in determining whether the employees are similarly situated. **Radue v. Kimberly-Clark Corp.**, 219 F.3d 612, 617-18 (7th Cir. 2009).

In **Everroad**, the Seventh Circuit reviewed the district court's grant of summary judgment of a gender and age discrimination claim. The defendant argued that Everroad was not meeting the company's legitimate expectations because she was insubordinate. The court discussed not only that Everroad could not prove the second prong, that she was not meeting her employer's legitimate expectations if she was insubordinate, but also that she failed to present any evidence calling into question the sincerity of her employer's non-discriminatory reason for terminating her, her insubordination. *Id.* at 480. The district court's grant of summary judgment was affirmed because the plaintiff failed to establish the second prong, meeting the employer's

legitimate expectations, and failed to present evidence of pretext. *Id.*

Forsythe's case is directly on par with *Everroad*. She cannot meet the second prong of the *McDonnell Douglas* analysis because her insubordination contradicts her assertion that she was meeting Ticor's legitimate expectations. She also has failed to establish evidence of pretext, showing nothing which calls into question Ticor's sincerity concerning her firing. She directly contradicted Soohey's order to stop working at all hours and mentioning it to customers, then Soohey fired her immediately after learning that she contradicted his instructions.

Forsythe contends that Hoener's note and letter of recommendation are proof that her firing for insubordination was a pretextual cover for age discrimination. It is not uncommon for employers to supply letters of recommendation to employees who have been terminated, and case law instructs on the effect of such letters. *See Motzny v. Hilander Food Stores*, 47 F.3d 1173, (7th Cir. 1995)(discussing letter of recommendation which was consistent with reason for discharge and that merely stated job performance appreciation was insufficient to rebut claim that plaintiff was fired for stated reason); *Overgard v. Cambridge Book Company*, 858 F.2d 371, 377-78 (7th Cir. 1988)("The letter of recommendation provides little evidence of anything. . . . The letter does not address the question of whether the plaintiff voluntarily quit or was fired. It does not touch at all on the reason why he was terminated."). Without mention of the specific

27

reasons given for termination, any evidence brought by the plain-
tiff stressing satisfactory performance simply challenges the
employer's decision - which the court may not do. *See **Anderson
v. Stauffer Chemical Company***, 965 F.2d 397, 403 (7th Cir. 1992)
("The fact that an employee does some things well does not mean
that any reason given for his firing is a pretext for discrimina-
tion.").

Hoener was not Forsythe's direct supervisor and did not fire
Forsythe.  Hoener went out of his way to compose a letter of
recommendation which carefully skirted the issue of her termina-
tion.  Hoener made it clear that the letter was not written in
his capacity of Vice President of Ticor, but is merely a personal
reference.  However, Hoener made no mention of Forsythe's insub-
ordination in either the note or the letter.  Offering that she
was a quality professional business woman, a very hard worker,
who was dedicated to her job, had no reservation putting in many
hours, provided exceptional service, and was one of nicest people
he knew was void of any evidentiary value to contradict that
Soohey fired her for refusing to follow a direct order. *See
**Overgard***, 858 F.2d at 378 ("There is nothing in the letter that
would give rise to any inference that the plaintiff was dis-
charged in willful violation of the ADEA.").  The letter of
recommendation is not evidence of pretext.

Because Forsythe has failed to carry her burden under the
***McDonnell Douglas*** analysis, Ticor's motion for summary judgment
is **GRANTED.**

_____

For the foregoing reasons, the Motion to Strike Plaintiff's Inadmissible Evidence Submitted in Opposition to Summary Judgment [DE 24] filed by the defendant, Ticor Title Insurance Company, on January 29, 2010, is **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Summary Judgment [DE 19] filed by the defendant on November 30, 2009, is **GRANTED.**  The Clerk is directed to enter judgment for the defendant, Ticor Title Insurance Company and close this matter.

ENTERED this 28th day of June, 2010


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge